**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

SATISH CHADHA         *

     Plaintiff,          *

         v.             *          Civil Action No. RDB-16-1087

NORTHROP GRUMMAN     *
SYSTEMS CORPORATION,

     Defendant.        *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Satish Chadha ("Chadha" or "Plaintiff") initially filed this action in the Circuit Court of Maryland for Baltimore City against his former employer, Northrop Grumman Systems Corporation ("Defendant" or "Northrop"), alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 61, *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.* (Pl.'s Compl., ECF No. 2.) Northrop removed the action to this Court based on this Court's original jurisdiction over these alleged violations of federal law, as well as this Court's diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff alleges that certain comments and conduct of his coworkers at Northrop Grumman subjected him to a hostile work environment and unlawful harassment. Chadha also claims that his ultimate termination was retaliatory and discriminatory. Northrop has responded that he was fired as a result of fraudulent overbilling of his time working on government contracts.

Now pending before this Court is Defendant's Motion for Summary Judgment "Defendant's Motion."[1] (ECF No. 19.) This Court has reviewed the parties' submissions, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the reasons stated herein, Defendant's Motion is GRANTED, and Summary Judgment will be ENTERED in favor of Northrop on all counts.

## BACKGROUND

In ruling on a Motion for Summary Judgment, the Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013).

Plaintiff Satish Chadha is an Indian-American born in 1944. (Pl.'s Resp., ECF No. 22 at 2.) Plaintiff began working for Defendant Northrop Grumman in 2004. (*Id.*) In 2005, Plaintiff was transferred to Defendant's Linthicum, Maryland facility to work in the Vendor Material Disposition Area ("VMDA"). (*Id.*) During this time, Wendy Good ("Good") was the supervisor of the VMDA. (*Id.*) Daryl Lang ("Lang") and Charlie Meyer ("Meyer") were two of Plaintiff's coworkers at the VMDA, and, like Plaintiff Chadha, were also over 50 years- old during the time relevant to this case. (ECF No. 19 at 17.)

During Chadha's tenure at the VMDA, Meyer and Lang directed certain comments towards Chadha referring to him as "chicken," "old man," and "Indian." (ECF No. 22 at 3.) With some frequency, Lang and Meyer would refer to Plaintiff by his race stating, "Hey,

---

[1] Also pending before this Court is Plaintiff's Motion for Leave to File Surreply to Defendant's Motion for Summary Judgment and Surreply to Rebut Misleading Statements in Defendant's Reply Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment. (ECF No. 26.) The Motion is GRANTED, insofar as this Court has considered the arguments and exhibits presented therein. It is DENIED insofar as Plaintiff seeks to submit further briefing on this matter.

Indian" and "Indian." (*Id.*) On a single instance, in the summer of 2011, Lang placed, in the shared work space, cartoon stickers which referred to Indians in a derogatory manner. (*Id.* at 5.) Meyer and Lang would also call Plaintiff "old man" and discuss retirement with him. (*Id.* at 3.) Additionally, the coworkers made comments about Plaintiff's hearing disability, including by asking Plaintiff to turn up his hearing aid. (*Id.* at 4.) On one occasion, Meyer and Lang wrote on an office blackboard that hearing aids should be worn and turned up; the comment apparently was directed at Plaintiff. (*Id.*) Alongside these taunts, Meyer and Lang, somewhat bizarrely, referred to Plaintiff as "chicken."[2] (*Id.*)

While Plaintiff informed his supervisor, Good, of Lang and Meyer's comments, she apparently took no action against Lang and Meyer. (ECF No. 22 at 5.) Plaintiff also approached Good's supervisor, David Handshu ("Handshu"), and made him aware of Lang and Meyer's derogatory and annoying comments. (ECF No. 19 at 11.)

In the spring of 2011, Meyer and Lang informed Good that Plaintiff was making numerous personal phone calls and was using the internet for non-work related matters during work hours. (ECF No. 19 at 4.)  Following an additional complaint from another coworker regarding Chadha's conduct during work hours, Good began to investigate Chadha's work performance.  (*Id.* at 5.)  The investigation revealed that on twenty-four (24) of the sixty-four (64) days reviewed, Plaintiff spent two or more work hours on the internet for personal use.  (*Id.*)  Even though Plaintiff was not completing work during those hours, Chadha still billed Northrop's client, the United States Government, for the time. (*Id.*) Good informed her superiors of Plaintiff's internet usage and fraudulent billing activities.  (*Id.* at 6.)

---

[2] The meaning of the chicken comments is unclear. (ECF No. 19 at 11.);(ECF No. 22 at 4.) Therefore, the Court is unable to infer any kid of discriminatory intent in these comments.

As a result, on September 23, 2011, Chadha was confronted with the information regarding his overbilling on government contracts. (*Id.*) That same day, Chadha went out on medical leave and remained out on such leave until November 14, 2011. Upon his return from medical leave, on November 15, 2011, Northrop terminated Chadha based on the his billing activities. (*Id.*)

On May 3, 2012, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (ECF No. 2 ¶ 8.) Over three years later, the EEOC opted not to bring suit on behalf of Chadha, and issued him a Notice of a Right to Sue on October 29, 2015. (*Id.* ¶ 10.) Plaintiff filed his Complaint in the Circuit Court of Maryland for Baltimore City on January 12, 2016. (ECF No. 2.) On April 12, 2016, Northrop removed the case to this Court. (*Id.*) Following discovery, Defendant filed a Motion for Summary Judgment on all claims. (ECF No. 19.) This Motion is now fully ripe for this Court's resolution.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a

judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). This Court "must not weigh evidence or make credibility determinations." *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993).

## ANALYSIS

### I.  Hostile Work Environment

The test for hostile work environment is the same under the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), and Title VII. *See Causey v. Balog,* 162 F.3d 795, 801 (4th Cir. 1998)(Title VII); *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001)(ADA); *Wells   v.* Gate, 336 F. App'x. 378, 387 (4th Cir. 2009)(ADEA). This test sets a very high bar for establishing that a work environment is a legally actionable hostile one. *See Tarwaab v. Virginia Linen Serv., Inc.*, 729 F. Supp. 2d 757, 776 (D. Md. 2010). To demonstrate a *prima facie* case of a hostile work environment a plaintiff must show: "(1) that [plaintiff] was subjected to unwelcome conduct; (2) the unwelcome conduct was based on [race, age, or disability]; (3) it was sufficiently pervasive or severe to alter the conditions of employment and to create a hostile work environment; and

(4) some basis exists for imputing liability to the employer." *Rachel–Smith v. FTData, Inc.,* 247 F.Supp.2d 734, 749 (D. Md. 2003) (citing *Smith v. First Union Nat'l Bank,* 202 F.3d 234 (4th Cir. 2000)). In weighing the "severe and pervasive" factor, courts look at the totality of the circumstances and consider: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Wells,* 336 F. App'x. at 388 (quoting *Harris v. Forklift Sys.,* 510 U.S. 17, 23 (1993)). In addition, courts are instructed that "the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position." *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81 (1998) (internal quotations omitted).

While the United States Court of Appeals for the Fourth Circuit has explained that protected characteristics under Title VII may be considered together in assessing hostile work environment claims, that court has not addressed whether characteristics protected under distinct statutes may be considered as a whole in assessing whether an employee was subject to a hostile work environment. *Guessous v. Fairview Prop. Investments, LLC,* 828 F.3d 208, 226 n.9 (4th Cir. 2016). In this case, the evidence cited in support of Plaintiff's race discrimination claim is sufficiently distinct from the evidence underpinning his age- and disability-based claims such that they should not be considered together. On the other hand, the factual bases for Chadha's age and disability (hearing impairment) claims are not so easily parsed. That is, given the familiar correlation between advanced age and hearing loss, the alleged discriminatory comments regarding hearing loss reasonably may be construed both in the context of his disability discrimination and age discrimination claims. Ultimately

however, established precedent does not permit this Court to consider all of Plaintiff's separate discrimination claims as a whole in determining whether Chadha was subjected to a hostile work environment. *See id.* Indeed, while Title VII prohibits particular types of discriminatory conduct, it is not a general "bad acts" statute. *Hart v. Broadway Servs., Inc.*, 899 F. Supp. 2d 433, 441 (D. Md. 2012) (quoting *Bonds v. Leavitt,* 629 F.3d 369, 384 (4th Cir. 2011)). As such, each claim is addressed separately below.

### A. The "Chicken" Comments Do Not Target a Protected Characteristic

Chadha relies on the fact that his coworkers Lang and Meyer called him "chicken" or "the chicken" two or three times per week in support of his hostile work environment claim. (Pl's. Dep. 94-95.); (ECF No. 22 at 4.) Plaintiff was unsure what they meant by this name, but did request that Meyer and Lang not call him "chicken" or "the chicken" as Plaintiff thought it was bullying. (*Id.* 96-98.)

While the "chicken" comments may be unusual, Chadha presents no evidence that the comments by Lang and Meyer were based on any age, race, or disability discrimination. Therefore, the Court may not consider the "chicken" comments in evaluating Plaintiff's claim for discrimination based on race, age, or disability. *See Jhaveri v. Comptroller of Treasury of Maryland*, RDB 05-1159, 2006 WL 2264388, at *9 (D. Md. Aug. 7, 2006) (because plaintiff could not link the alleged harassment to her race, color, religion, or national origin, the alleged harassment could not support her hostile work environment claim.)

### B. Discrimination Under the Age Discrimination in Employment Act

Plaintiff argues that the derogatory comments made by Meyer and Lang regarding Plaintiff's age establish the existence of a hostile work environment under the ADEA. (*See*

ECF No. 22.) Specifically, Plaintiff points to the fact that Meyer referred to Plaintiff as "old man" and made other references to Plaintiff's age including: "Hey, old man, how are you doing?," and "When are you retiring?" (Pl. Dep. 100.) Plaintiff also states that Lang would refer to Plaintiff as "old man." (Pl. Ex. 1 ¶ 8.) Plaintiff argues that the age-based comments were "severe and pervasive" as they occurred almost daily and were demonstrative of the animosity and distaste that Meyer and Lang had for Plaintiff. (ECF No. 22 at 8-9.)

Defendant argues that Plaintiff's claim for a hostile work environment under the ADEA fails as a matter of law because the comments were not "severe and pervasive" so as to create hostile work environment liability. (ECF No. 19 at 16-17.) Defendant points to Meyer's deposition, in which Meyer admits that he called Plaintiff "old man," but notes that Meyer, Lang, and Chadha were all within ten years of age of each other, and that referring to each other as "old man" was common practice among "older folks." (*Id.* 43-44.)

Plaintiff has failed to establish that "old man" and other age-related comments created a hostile work environment as a matter of law. While the comments may not have been welcome, it is well established that, "[w]orkplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard." *See EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). Moreover, merely offensive comments about one's age are insufficiently severe to alter the conditions of employment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S. Ct. 2275, 2283 (1998); *Cepada v. Bd. of Educ. of Baltimore Cnty.*, 814 F.Supp.2d 500, 513 (D. Md. 2011) (repeatedly calling plaintiff an "old man" and noting that he was younger not objectively severe so as to alter conditions of employment).

Furthermore, Plaintiff has not alleged that the comments affected his work performance. *See Faragher,* 524 U.S. at 787–88. To the contrary, Plaintiff claims he was consistently able to perform his work to the best of his ability. (ECF No. 22 at 2.) Thus, Plaintiff has not established a triable issue of fact as to whether any age-related harassment to which he was subjected created a legally actionable hostile work environment, and summary judgment must be entered in favor of Defendant on this claim.[3]

### C.  Discrimination Under the Americans with Disabilities Act

Plaintiff argues that the derogatory comments regarding Plaintiff's hearing disability establish the existence of a hostile work environment. (ECF No. 22 at 4, 8.) Plaintiff cites Meyer and Lang's comments asking Plaintiff to "turn his hearing aid up." (*Id.* at 4.) Additionally, Plaintiff points to the comment that was written on a blackboard regarding Plaintiff's hearing aid which stated that, "[h]earing aids must be worn at all times in the VMDA, turned up and turned on so that you can stay tuned in." (Pl. Ex. 1 ¶ 15.) Plaintiff argues that Meyer and Lang's comments and this single 'published' incident these comments created a hostile work environment. (ECF No. 22 at 8.)

Defendant argues that it is entitled to summary judgment because Meyer and Lang's verbal and written comments regarding Plaintiff's hearing disability do not meet the "severe and pervasive" threshold for a hostile work environment. (ECF No. 19 at 16-17.) In support of their argument, Defendant cites Lang's deposition in which he states that he wrote the comments on the blackboard as reminder to Plaintiff because he was not properly using his hearing-aid and thereby frustrating his coworkers. (Lang Dep. 29.) Furthermore, Defendant

---

[3] Because Plaintiff's claims fail to satisfy the "severe and pervasive" threshold, this Court need not determine whether liability can be imputed to Northrop.

points to Plaintiff's deposition in which Plaintiff himself states that it can be obnoxious to work with someone who cannot hear them properly. (Pl. Dep. 31.) Defendant argues that these comments were not "severe and pervasive" and even if so, Defendant argues there is no basis to impute liability on Defendant itself. (ECF No. 19 at 22.)

Meyer and Lang's comments regarding Plaintiff's hearing disability are the blackboard were neither severe nor pervasive and, thus, do not meet the "high bar" required to establish a hostile work environment. *See Sunbelt,* 521 F.3d at 315. Indeed, the Fourth Circuit has acknowledged that comments regarding a plaintiff's hearing disability such as, "Pay Attention," "Didn't you hear the phone ring?," and "Why do you go to meetings, you can't hear anyway," do not meet the standard required to establish a hostile work environment. *See Schiflett v. GE Fanuc Automation Corp.,* 1998 WL 386116 at *4 (4th Cir. Jun. 19, 1998). Thus, there is no triable issue of material fact as to Plaintiff's claims that the disability-related comments created a hostile work environment. Accordingly, Defendant is entitled to summary judgment on Plaintiff's hostile work environment claims under the ADA.[4]

## D. Race Discrimination Under Title VII

Plaintiff argues that the derogatory comments made by Meyer and Lang on a regular basis regarding Plaintiff's race establish the existence of a hostile work environment. (Pl. Ex. 1 ¶ 6.) Plaintiff stated that he did not like being referred to by his race and that these comments were said in a derogatory manner. (*Id.* ¶ 7.) Additionally, Plaintiff states that Lang posted in the workspace a racially insensitive cartoon with derogatory language regarding Indians. (*Id.* ¶ 17.) Plaintiff argues that these comments and the placing of the cartoon were

---

[4] Because Plaintiff's claims fail to satisfy the "severe and pervasive" threshold, this Court need not determine whether liability can be imputed upon to Northrop.

sufficiently "severe and pervasive" so as to create a hostile work environment claim. (ECF No. 22 at 8-9.) Furthermore, because Plaintiff informed Good and Handshu of these comments and cartoons, and neither Good nor Handshu addressed the issue, Plaintiff argues liability should be imputed upon Defendant. (*Id.* at 5.)

Defendant argues that Meyer and Lang's racially insensitive comments were not sufficiently "severe and pervasive" to establish a hostile work environment. (ECF No. 19 at 16-17.) Defendant states that because Handshu and Good were not specifically informed of the racial comments, there is no basis to impute liability upon Defendant. (*Id.* at 22.)

Even viewing the evidence in the light most favorable to Plaintiff, Meyer and Lang's insensitive and annoying references to Plaintiff as "Indian," coupled with the single incident involving the racist cartoon, do not meet the "severe and pervasive" standard necessary to establish the existence of a hostile work environment as a matter of law. (ECF No. 22); *See e.g., Greene v. Swain Cty. P'ship for Health*, 342 F. Supp. 2d 442, 455 (W.D.N.C. 2004) (no hostile work environment where Native American plaintiff subjected to derogatory comments based on race such as "Token Indian"). *Manatt v. Bank of America*, 339 F.3d 792, 795-99 (9th Cir. 2003) (no hostile work environment where Chinese plaintiff was subjected to derogatory racial comments such as "China woman" and where defendants mocked her Asian physical attributes); *Gustave-Schmidt v. Chao*, 360 F. Supp.2d 105, 121 (D.D.C. 2004) (no hostile work environment where supervisor referred to Hispanics as "spics" in the presence of a Hispanic subordinate). Thus, Defendant is entitled to Summary Judgment on Plaintiff's Title VII hostile work environment claim.

Even if this Court were to find the alleged racial comments by Meyer and Lang "severe and pervasive," there is no basis for imputing liability to Defendant. "[A]bsent some elaborate scheme, harassment by a fellow-employee having no authority of any kind over the victim never can be found aided by the agency relation; as to such employees, the agency relation provides no 'aid' for their conduct but workplace proximity, and that does not suffice for the purpose." *Mikels v. City of Durham, N.C.*, 183 F.3d 323, 332 (4th Cir. 1999) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762 (1998)). Therefore, in order for liability to be imputed to Northrop in this case, Plaintiff must show that after actual or constructive knowledge of the alleged harassment based on his race, Good and Handshu failed to take prompt action to end the harassment. *Id.*

Here, Chadha did not inform Good and Handshu of the specific racial comments which were made to him by Meyer and Lang. Plaintiff only mentioned that he felt as though he was being "bullied" and spoke of the alleged harassment in general terms.[5] (Pl. Dep. 144-46; 69); (Handshu Dep. 14-15.) Therefore, Good and Handshu did not possess active or constructive knowledge that Plaintiff was being harassed based on his race. Even if Plaintiff were able to establish that the comments and the hanging of the cartoon were "severe and pervasive," the hostile work environment still fails because Plaintiff is unable to show that liability should be imputed to Northrop.

---

[5] In Plaintiff's deposition, he stated that he made only general statements regarding the issues he was having with his coworkers. (Pl. Dep. 144-46; 69). This statement is consistent with the testimony of his supervisors Handshu and Good. (Handshi Dep. 14-15); (Good Dep. 45-49.) Plaintiff has filed a subsequent affidavit contradicting his initial deposition stating that he did specifically inform his supervisors of the "Indian" comments. (Pl. Aff. ¶ 13.). While Plaintiff filed a subsequent affidavit, "a party cannot submit an affidavit solely for the purpose of creating a dispute of fact or which contradicts deposition testimony." *Hernandez v. Trawler Miss Vertie Mae, Inc.*, 187 F.3d 432, 438 (4th Cir. 1999); *See also Fry v. Prince George's Cty., Md.*, AW-05-3150, 2008 WL 9360013, at *4 (D. Md. Mar. 14, 2008).

## II. Discriminatory and Retaliatory Termination

Chadha has also filed wrongful and retaliatory termination claims under the ADA, the ADEA, and Title VII. (ECF No. 2.)  Northrop argues in its Motion for Summary Judgment (ECF No. 19) that Plaintiff fails to establish *prima facie* claims of discriminatory and retaliatory discharge. (ECF No. 19 at 24.)

Where the record contains no direct evidence of discrimination, a plaintiff's claims must be analyzed under the burden-shifting scheme established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, (1973).  *See Hawkins v. Pepsico, Inc.,* 203 F.3d 274, 281 (4th Cir. 2000); *Thompson v. Potomac Elec. Power Co.,* 312 F.3d 645, 649 (4th Cir.2002) ("[T]he elements required to establish a *prima facie* case are the same under Title VII and Section 1981.").  Under this framework, the plaintiff must first present enough evidence to prove a *prima facie* case of disparate treatment.  *Reeves v. Sanderson Plumbing Products,* 530 U.S. 133, 142–43 (2000).  Second, once he establishes a *prima facie* case, the burden shifts to the defendant to produce evidence that the adverse employment action was taken against the plaintiff "for a legitimate, nondiscriminatory reason."  *Id.* at 142 (citing *Tex. Dept. Cmty. Affairs v. Burdine,* 450 U.S. 248, 254 (1981)).  Third, the plaintiff is "afforded the opportunity to prove by a preponderance of evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  *Id.* (quoting *Burdine,* 450 U.S. at 253) (internal quotation mark omitted).  *See also Green v. Wackenhut Sec. Inc.*, RDB-12-00264, 2013 WL 4478050, at *4 (D. Md. Aug. 19, 2013).

### A. Plaintiff Fails to Establish a *Prima Facie* Case of Wrongful Termination Under the ADEA, ADA, and Title VII

In order to establish a *prima facie* case of wrongful termination under the ADEA, the ADA, and Title VII, a plaintiff must demonstrate that (1) he is within the protected class; (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. *See Ennis v. Nat'l Ass'n of Bus. & Educ. Radio,* 53 F.3d 55, 58 (4th Cir.1995) (stating test under the ADA); *Scott v. Health Net Fed. Servs., LLC*, 463 F. App'x 206, 208 (4th Cir. 2012) (citing *Hill v. Lockheed Martin Logistics Mgmt., Inc.,* 354 F.3d 277, 285 (4th Cir.2004)(stating test under Title VII); *Sagar v. Oracle Corp.*, 523 F. App'x 999, 1001 (4th Cir. 2013) (stating test under ADEA).

In the instant case, it is undisputed that Chadha, who was 59 years-old at the time he was hired, Indian-American, and has a hearing disability, is a member of three protected classes under the ADEA, Title VII, and the ADA, and that he suffered an adverse employment action when he was terminated.  Thus, the first two elements of wrongful termination as a matter of law are satisfied.

Defendant argues, however, that plaintiff is unable to establish a *prima facie* case of wrongful termination because the undisputed facts reflect that Chadha was not performing his job duties satisfactorily, as he was fraudulently overbilling the United States Government—one of Northrop's most important clients. (ECF No. 19 at 24-25.)  Plaintiff does not deny the fact that he mischarged Northrop's client, but asserts that this was excusable because "unintentional." (ECF No. 22 at 14.)

The undisputed evidence before this Court, however, indicates that Chadha was spending approximately two hours per day using his work computer for personal use while charging the government—a serious workplace misdeed which could even be the basis for civil or criminal liability for his employer.  (ECF No. 19 at 5-6.)  Thus, as Plaintiff is unable to prove that his work was satisfactory, he is unable to establish a *prima facie* case of discriminatory discharge, and Defendant is entitled to Summary Judgment.

Even if Chadha had stated a *prima facie* case—which he has not—he fails to show that the decision to terminate him was pretextual.  Rather, he offers mere speculation regarding the way in which his mischarging was discovered in order to create an aura of a pretext.  Specifically, he states that it is "quite curious why Meyer and Lang complained that Plaintiff was not doing his work because they did not do the same work as the Plaintiff and in the normal course of the work would not be aware that he was not doing it." (ECF No. 22 at 14.) (citing Pl. Ex. 1 ¶ 5.) He further states that it is also questionable why when Plaintiff reported his issues with Meyer and Lang to Good, she did not respond at all, but when Meyer and Lang reported issues with Plaintiff to Good, she was "vigorous" in her response. (ECF No. 22 at 14.) Plaintiff also argues that he was never disciplined prior to this mischarging incident, and was therefore dealt with unfairly. *Id.*

Plaintiff has presented no record evidence that Defendant's proffered reason for his termination was pretextual.  This is insufficient to withstand summary judgment as, "the nonmoving party . . . cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). *See also Bouchat v. Balt. Ravens Football Club*, 346 F.3d 514, 526 (4th Cir. 2003) (noting

that a party can "survive [a] motion for summary judgment only by adducing specific, nonspeculative evidence"). Accordingly, Summary Judgment is ENTERED in favor of Defendant on Plaintiff's wrongful termination claims.

### B. Plaintiff Fails to Establish a *Prima Facie* Case of Retaliatory Termination

"To establish a *prima facie* case for retaliation [under Title VII, ADA, and the ADEA], [a plaintiff] must be able to show that (1) he was engaged in protected activity, (2) the defendant acted adversely against him, and (3) that there was a causal connection between the first two elements." *Noel v. United Parcel Serv., Inc.*, PWG-13-1138, 2014 WL 4452667, at *7 (D. Md. Sept. 9, 2014); *Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 720 (D. Md. 2013) (test under ADA); *Buchhagen v. ICF Int'l, Inc.*, 545 F. App'x 217, 220 (4th Cir. 2013) (test under ADEA); *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 410 (4th Cir. 2013) (test under Title VII).

The "causation element [ ] requires [the plaintiff] to demonstrate not only a causal connection between his opposition and his termination, but that his opposition was the 'but for' cause of that termination." *Noel*, WL 4452667 at *8 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nasser,* 133 S.Ct. 2517, 2534 (2013)). After a plaintiff has sufficiently established this connection, his employer then has the burden "to rebut the presumption of retaliation by articulating a legitimate non-retaliatory reason for its actions." *Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir. 1997).  In response, a plaintiff "must demonstrate that the proffered reason is a pre-text for forbidden retaliation." *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 706 (4th Cir. 2001)

As explained above, Defendant had a legitimate, non-discriminatory basis on which to terminate Plaintiff: his mischarging. Thus, even though Plaintiff engaged in a protected activity and suffered adverse employment action, the undisputed facts before this Court indicate that Plaintiff is unable to show that the asserted retaliation was the "but for" cause for his termination. Accordingly, Defendant is entitled to Summary Judgment on Plaintiff's retaliatory termination claim.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 19) is GRANTED, and Summary Judgment shall be ENTERED in favor of Northrop on all counts.

A separate Order follows.

Dated: July 31, 2017

                            _____/s/_____
                            Richard D. Bennett
                            United States District Judge